UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PORTIA HARTENCIA JORDAN,

                                        Plaintiff,

                    -v-

GOLDEN BRIDGE BOOKS,

                                        Defendant.

---

22 Civ. 6154 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On July 19, 2022, plaintiff Portia Hartencia Jordan ("Jordan") filed the Complaint in this case, bringing claims of copyright infringement, unfair competition, and violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(b), against defendant Golden Bridge Books ("Golden Bridge").  Jordan also moved for a temporary restraining order ("TRO").  *See* Dkt. 1 ("Compl.") ¶¶ 22–42; Dkt. 5 (motion for TRO).  After the Court denied Jordan's motion for a TRO, Jordan moved for default judgment as to Golden Bridge.  Dkt. 44 ("Mot.").  For the following reasons, the Court denies the motion.

I.      **Background**[1]

        A.      **Factual Background**

Jordan is a Bahamian resident and copyright holder of a book called *Herbal Medicines and Home Remedies: A Potpourri in Bahamian Culture* (the "Book").  Compl. ¶¶ 8, 12.  Jordan alleges that Golden Bridge, a bookseller with an address in Canada, has been selling illegally copied

---

[1] The Court draws its account of the underlying facts of this case from Jordan's Complaint, Dkt. 1, the attached exhibits, and filings in support of her motion for default judgment, Dkt. 44.

versions of the Book through online platforms since 2004. *Id.* ¶¶ 10, 15–18. She claims that, although she printed only 500 copies of the Book, with distribution limited to the Bahamas, she was able to purchase two copies of the Book from Golden Bridge. *Id.* ¶¶ 13–16; Dkt. 29 at 3. These copies, labeled as "used," appeared upon inspection to be "new, but illicitly and illegally copied versions of the Book." Compl. ¶ 16; *see also* Mot. at 2. Jordan alleges that Golden Bridge has re-established itself multiple times under different web platform aliases so as to evade service in this lawsuit. Mot. at 2.

**B.    Procedural History**

On July 19, 2022, Jordan filed the Complaint, Dkt. 1, and sought a TRO against Golden Bridge, Dkt. 5. On August 1, 2022, after Jordan failed to file proof of service of the order on Golden Bridge, the Court dismissed without prejudice Jordan's motion for a TRO. Dkt. 11.

On January 18, 2023, pursuant to the Court's order granting Jordan's motion for alternative service of process under Federal Rule of Civil Procedure 4(f)(3), Dkt. 21, Jordan served Golden Bridge, Dkt. 27. On January 19, 2023, Jordan again moved for a TRO, Dkts. 28, 29, and requested that the Court, *inter alia*, (1) enjoin Golden Bridge from copying and selling the Book, (2) prevent the fraudulent transfer of assets from Golden Bridge's online store accounts, and (3) order third parties, including the online sales platforms at issue, to disable any accounts used by Golden Bridge to sell copyright-infringing versions of the Book and restrain all funds transmitted to Golden Bridge's accounts, Dkt. 30. On January 23, 2023, the Court received, by email, a letter and exhibits from Golden Bridge, which had not formally appeared, in response to Jordan's motion. Dkt. 33. That day, the Court issued an order that Golden Bridge, as an entity, could be heard only if it obtained counsel that formally appeared on its behalf and set out its legal position. *See id.* Golden

Bridge did not do so.  On January 27, 2023, Jordan filed a reply to Golden Bridge's email response.
Dkt. 35.

On February 3, 2023, the Court denied Jordan's motion for a TRO, on the grounds that she
had not adequately demonstrated a likelihood of success on the merits.  Dkt. 36.  In particular, the
Court found that Jordan had not made a sufficient showing that the versions of the Book sold by
Golden Bridge were unauthorized copies, rather than legal copies sold to individuals in the United
States and/or Canada and subsequently sold by Golden Bridge as "used" copies.  *See id.*  The Court
also held that, in light of Golden Bridge's representation in its email response that it would no
longer sell the Book, Jordan had not demonstrated that she would suffer irreparable harm absent the
injunctive relief.  *See id.*  The Court reiterated that Golden Bridge, should it wish to participate in
and defend itself in this case, must promptly secure legal representation and that such counsel must
formally appear on its behalf.  *Id.*

On February 8, 2023, after receiving an email from Golden Bridge stating that it would not
obtain counsel in this case, the Court directed Jordan to either voluntarily dismiss the case or move
for default judgment.  Dkt. 38.  On February 13, 2023, Jordan obtained a certificate of default as to
Golden Bridge.  Dkt. 43.  On February 15, 2023, Jordan moved for default judgment on all claims
against Golden Bridge, filing a declaration and exhibits in support.  Dkt. 44 ("Mot.").  That day,
Jordan filed proof of service of the motion on Golden Bridge.  Dkt. 45.  On February 16, 2023, the
Court received by email a third unsolicited letter from Golden Bridge, which offered "new facts"
regarding the allegedly infringing sales of the Book and argued that Jordan had provided
"misleading information" to the Court.  On February 21, 2023, pursuant to a Court order, Jordan
filed a declaration addressing whether an inquest into damages would be necessary.  Dkt. 47.  To
date, Golden Bridge has not formally appeared in this case.

## II.    Motion for Default Judgment

### A.    Applicable Legal Principles

Federal Rule of Civil Procedure 55 sets forth a two-step process for entry of default judgment against a party who fails to defend: (1) the entry of default, which "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff," and (2) the entry of a default judgment, which "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see, e.g.*, *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "A district court is empowered under Rule 55(b)(2), in the exercise of its discretion, to 'conduct hearings or make referrals' as may be necessary, *inter alia*, to determine the amount of damages or establish the truth of the plaintiff's allegations." *Mickalis Pawn Shop*, 645 F.3d at 129 (quoting Fed. R. Civ. P. 55(b)). Given its "'strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,'" the Second Circuit has "characterized a district court's discretion in proceeding under Rule 55 as 'circumscribed.'" *Id.* (first quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); and then quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)).

As to the entry of a default judgment, "[i]t is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." *Id.* at 137 (citation omitted). However, the district court is "required to determine whether [the plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84; *see, e.g.*, *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) ("[A] defendant's default does no more than concede the complaint's factual allegations."). "The essence of Fed.

4

R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than that it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations." *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020). In assessing a motion for default judgment, the district court must accept as true all of the factual allegations in the complaint, except those relating to damages. *Au Bon Pain Corp.*, 653 F.2d at 65. "The legal sufficiency of the[] claims is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the non-defaulting party's favor." *Spin Master*, 463 F. Supp. 3d at 367–68 (citation omitted).

### B.    Analysis

The Court has reviewed Jordan's complaint, motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b), submissions in support of the motion, and previous filings in support of her motion for a TRO. She seeks (1) entry of default judgment against Golden Bridge on all counts in the Complaint; (2) a permanent injunction enjoining Golden Bridge from infringing Jordan's intellectual property rights with respect to the Book; (3) $100,000 in statutory damages under 17 U.S.C. § 504; (4) $23,013 in attorneys' fees and $620 in costs; and (5) an order restraining all accounts controlled by Golden Bridge and mandating the transfer of $123,633 in withheld assets. Mot. at 9–10.[2] For the following reasons, the Court finds that the Complaint fails to establish Golden Bridge's liability as a matter of law.

At the threshold, the Court finds that it can exercise personal jurisdiction over Golden Bridge, as required to consider the motion for default judgment. *See Sinoying Logistics Pte Ltd. v.*

---

[2] The Court has not considered the emails it has been sent by Golden Bridge, because it has not appeared in the case. As a corporate entity, Golden Bridge may appear only through counsel and may not represent itself *pro se*. *See, e.g.*, *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007).

*Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).  New York's long-arm statute provides for personal jurisdiction over any entity that "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1).  Based on the allegation in the Complaint that Golden Bridge has "conducted significant business in New York through marketing to New York-based residents," including by "offering the [] Book that is the subject of the action," Compl. ¶ 4, the Court has personal jurisdiction over Golden Bridge. *Cf., e.g.*, *McGraw Hill LLC v. Doe 1*, No. 20 Civ. 356 (LJL), 2022 WL 2979721, at *3 (S.D.N.Y. July 26, 2022) (court had personal jurisdiction where complaint alleged defendants sold infringing goods into New York).  Furthermore, Jordan's service of process on Golden Bridge established personal jurisdiction under Federal Rule of Civil Procedure 4(k), as Golden Bridge is a foreign entity "not subject to jurisdiction in any state's courts of general jurisdiction," and exercising jurisdiction over Golden Bridge does not offend the Constitution.  Fed. R. Civ. P. 4(k); *see* Compl. ¶ 5.

However, even when accepting as true all of the factual allegations in the Complaint and drawing all inferences in Jordan's favor, *see Au Bon Pain Corp.*, 653 F.2d at 65, the Complaint falls short of making out a *prima facie* case as to the three counts against Golden Bridge.

First, as to the claim of copyright infringement, the Complaint must plausibly allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Frye v. Lagerstrom*, No. 20-3134, 2021 WL 4022695, at *3 (2d Cir. Sept. 3, 2021) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010)).  "A certificate of copyright registration provides *prima facie* evidence that a copyright is valid and the work is original." *Id.* (citing *Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir. 2001)); *see, e.g., Lee v. Karaoke City*, No. 18 Civ. 3895 (PAE), 2020 WL 5105176, at *3–4 (S.D.N.Y. Aug. 31, 2020).  As to the first element, the Complaint adequately alleges Jordan's ownership of a valid copyright. *See*

Compl. ¶ 12; Dkt. 1-1. But, as to the second, the Complaint alleges only that Golden Bridge sold

two copies of the Book that looked new, not that those copies "were in fact counterfeit," *McGraw*

*Hill LLC*, 2022 WL 2979721, at *3. It is true that, because "direct evidence of copying is seldom

available, a plaintiff may establish copying circumstantially." *Spin Master*, 463 F. Supp. 3d at 369

(citation omitted). However, without more, the mere allegations that Golden Bridge sold Jordan

two new-looking copies of the Book, and that the Book was subject to a limited distribution, do not

non-speculatively establish that Golden Bridge sold *infringing* copies of Jordan's work—let alone

that it had done so going back to 2004, as the Complaint alleges. *Contra Pearson Educ., Inc. v.*

*Labos*, No. 19 Civ. 487 (JPC), 2021 WL 4507530, at *2 (S.D.N.Y. Sept. 30, 2021) (entering default

judgment where plaintiffs alleged that they purchased between seven and 17 unauthorized works

from defaulting defendants, some of whom used fictitious names and addresses on online

platforms); *Pearson Educ., Inc. v. ABC Books Ltd.*, No. 19 Civ. 7642 (RA), 2021 WL 1577766, at

*1–2 (S.D.N.Y. Apr. 21, 2021) (noting entry of default judgment where plaintiffs alleged that they

purchased between three and 13 counterfeit books from various defendants, some of whom had

received customer reviews stating that books were counterfeit and one of whom was affiliated with

a "prolific infringer that has been the subject of multiple litigations"). Indeed, certain circumstances

of the two sales as alleged—including the "premium price" at which the Book was sold, Compl.

¶ 21, and the Book's limited distribution, *id.* ¶¶ 12–13—at least as plausibly, if not more plausibly,

support the alternative and legally benign inference: that Golden Bridge merely *resold* copies of the

Book that had been legally created and which other persons had previously purchased. *See, e.g.*,

*Labos*, 2021 WL 4507530, at *2 (entering default judgment where defendants sold allegedly illegal

copies of work at "prices that were far below market value"); *Spin Master*, 463 F. Supp. 3d at 369–

70 (reasoning that the fact that original work was "widely disseminated" supported inference that

defendant could readily access, and subsequently copy, work (citation omitted)); *McGraw Hill LLC*, 2022 WL 2979721, at *3 (finding that plaintiff established *prima facie* case of copyright infringement based on, *inter alia*, "poor quality" of allegedly counterfeit products). And Golden Bridge's attempts to avoid service in this lawsuit, *see, e.g.*, Mot. at 2, do not fill this void. Ultimately, the Complaint's conclusory allegation that Golden Bridge "is selling new, but illicitly and illegally copied versions of the Book," Compl. ¶ 16, lacking any factual support as pled, suggests no more than "the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679. That is insufficient to warrant entering default judgment in Jordan's favor.

Jordan's motion for default judgment as to the second and third counts of her Complaint also fails, as both claims similarly turn on the ill-pled allegation that Golden Bridge sold illegally created copies of the Book. *See* Compl. ¶¶ 31–42; Mot. at 3–4. In so holding, the Court assumes, *arguendo*, that Jordan's unfair competition claim is not preempted by her copyright infringement claim. *See, e.g.*, *Kelley v. Univ. Music Grp.*, No. 14 Civ. 2968 (PAE), 2016 WL 5720766, at *8 (S.D.N.Y. Sept. 29, 2016) (citing, *inter alia*, *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 462 (S.D.N.Y. 1999)). To merit default judgment on the unfair competition claim, the Complaint must plausibly allege the "bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Ward v. Barnes & Noble, Inc.*, 93 F. Supp. 3d 193, 208 (S.D.N.Y. 2015) (quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995)). Because the Complaint only conclusorily alleges misconduct by Golden Bridge, it does not plausibly plead any "bad faith misappropriation," *id.*, on the part of Golden Bridge so as to permit entry of default judgment on the unfair competition claim.

Likewise, the Complaint does not sufficiently allege a violation of section 1202(b) of the DMCA. Section 1202(b) prohibits a person from, *inter alia*, "intentionally" removing or altering

copyright management information and distributing or importing works or copies of works while knowing of such unauthorized removal or alteration, where such actions would "induce, enable, facilitate, or conceal an infringement of any right" under the DMCA. 17 U.S.C. § 1202(b). The Complaint lacks factual allegations in support of this claim other than its allegation that Golden Bridge sold copies of the Book that had been illegally created. But that allegation, as noted, is pled only conclusorily. Thus, even assuming *arguendo* that a well-pled allegation to that effect would plead a violation of the DMCA, the Complaint does not adequately so plead.

For the reasons above, the Court declines to exercise its "circumscribed," *Mickalis Pawn Shop*, 645 F.3d at 129 (citation omitted), discretion under Rule 55 to enter default judgment as to liability on any of the three counts. The Court therefore does not have occasion to consider Jordan's motion for entry of a default judgment as to monetary damages and injunctive relief.

## CONCLUSION

For the foregoing reasons, the Court denies without prejudice Jordan's motion for default judgment. The Clerk of the Court is respectfully directed to terminate the motion pending at docket 44.

This case remains open. Jordan is at liberty to pursue discovery in support of her claims. The Court directs Jordan, within two weeks of the date of this order, to file a letter indicating whether she intends to pursue this case, and if so, to submit a proposed case management plan, consistent with the Court's Individual Rules. *See Individual Rules and Practices in Civil Cases*, https://www.nysd.uscourts.gov/hon-paul-engelmayer.

SO ORDERED.

_____
Paul A. Engelmayer
United States District Judge

Dated: July 6, 2023
       New York, New York